UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LAURA ENDRES, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) ) |
|     Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Laura Endres, and for her claims and causes of action against Defendant, The Prudential Insurance Company of America, states as follows:

PARTIES

1. Laura Endres ("Endres") is a resident and citizen of the State of Missouri.

2. The Prudential Insurance Company of America ("Prudential") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Prudential in this action.

JURISDICTION AND VENUE

3. Endres brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Since August 2, 1999, Endres worked as a Process Auditor for Sprint Nextel Corporation ("Sprint").

10. During her employment, Endres suffered from chronic and progressive conditions including bilateral knee arthritis, neck arthritis, high blood pressure, hand tremors, lower extremity edema and weakness causing falls, sleep apnea, depression, and severe anxiety with panic attacks.

11. Endres medical issues began in 2009 after a motor vehicle accident and continued until present.

12. Endres's chronic conditions impaired her ability to perform her own occupation resulting in her eventual leave from work on August 10, 2020.

13. Sprint sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

14. The Plan is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).

15. The Plan offered disability benefits to qualifying Sprint employees, including Endres.

16. At all relevant times, Endres has been a participant and a covered person under the terms of the Plan.

17. Sprint is the administrator of the Plan.

18. Sprint delegated or attempted to delegate the function of issuing the LTD claim determinations to Prudential.

19. Sprint and Prudential entered into an administrative services contract through which Sprint paid Prudential for acting as claim administrator.

20. Endres enrolled in the Plan and was eligible for benefits.

21. The Plan provided that employees would be entitled to receive LTD benefits if they became "Disabled" from their "regular occupation" which The Plan defines as follows:

> **How Does Prudential Define Disability?**
>
> You are disabled when Prudential determines that:
>
> - you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

22. Prudential defines "material and substantial duties" as:

> **Material and substantial duties** means duties that:
>
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.
>
> **Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

23. Prudential defines "gainful occupation" as:

> **Gainful occupation** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

24. Upon her leave from work, Endres initiated an LTD claim with Prudential.

25. Prudential determined that it needed more information and completed an internal review of the medical supplied to Prudential.

26. On June 28, 2023, Prudential denied Endres's LTD claim.

27. On December 19, 2023, Endres appealed Prudential's denial and provided medical records demonstrating that Endres cannot perform her occupation on a full-time basis.

28. ON May 4, 2019, an MRI Thoracic w/o Contrast was performed finding:

> **MRI Thoracic Spine:** Diagnostic Imaging
> MRI Thoracic w/o Contrast   - DOE 5/04/19
> Impression:
> 1. Acute versus subacute anterior compression fracture of the T9 vertebral body with loss of approximately 50% of the vertical height of the anterior cortex of T9. Reactive marrow edema extends into the pedicles bilaterally, however, no evidence for displaced fracture of the posterior cortex, pedicles or lamina is present.
> 2. Mild flattening of the anterior thecal sac at the T9 level, without evidence for thoracic cord compression or significant thoracic canal stenosis.
> 3. No other evidence for fracture, osseous contusion or reactive bone marrow edema.
> Entered 5/6/19 BH
> **MRI Other:** Lt. foot- Severe stress reaction throughout the base and entire diaphysis of the fifth metatarsal with surrounding soft tissue edema; mild first metatarsophalangeal joint osteoarthrosis; edema in the medial sesamoid at the head of the first metatarsal is compatible with sesamoiditis.

29. On July 14, 2020, Endres was seen by Dr. Laurie Fisher, MD, and reported that she hurt her right lower back a few days ago, and that walking makes it worse. Dr. Fisher again suggested hiatal hernia repair which was delayed due to COVID, and recommended that she obtain a mammogram.

30. On January 21, 2022, Knee imaging performed by Diagnostic Imaging Centers revealed mild medial compartment narrowing and osteophytes present. Marginal osteophytes are seen in the patellofemoral compartment. Sharpening of the tibial spines is seen. Impression: arthritic changes.

31. On February 11, 2021, Endres saw Jamie Leopold, NP, to treat her high blood pressure. Endres reported recent anxiety and stress, weight loss, a recent sickness, and migraines.

32. On March 1, 2021, Endres saw Leopold, NP, to follow up regarding depression.

33. On March 3, 2021, Dr. Tom Phillips, MD, treated Endres for cervical pain and bilateral knee pain. On examination Endres gait was mildly antalgic, ROM was decreased bilaterally in her

knees, there was bilateral pain at her joint line, and mild crepitation in her left knee. Dr. Phillips opined that Endres has bilateral knee degenerative arthrosis, and degenerative joint disease in her cervical spine.

34. On April 29, 2021, Endres saw Leopold, NP, via telehealth appointment.

35. On May 17, 2021, Endres saw Leopold, NP, for a blood pressure follow up. Endres reported high blood pressure and daily diarrhea.

36. On June 28, 2021, Endres saw Leopold, NP, and reported recent migraines.

37. On September 13, 2021, Endres saw Leopold, NP, for a wellness examination.

38. On September 16, 2021, Imaging performed by Menorah Medical Cener revealed mild atelectasis, and large hiatus hernia.

39. On April 18, 2022, Endres saw Dr. Fisher to follow up on high blood pressure.

40. On December 20, 2022, Endres saw Dr. Fisher, and reported knees, neck, and back pain.

41. On May 1, 2023, Endres saw Dr. Fisher and reported pain.

42. On December 28, 2023, Prudential hired MES Peer Review Services to evaluate Endres's medical records.

43. MES Employee Dr. Chalonda Hill, MD, found Endres unlimited and unrestricted.

44. On January 17, 2024, Prudential again denied Endres's LTD claim.

45. At all relevant times, Endres was and remains "Totally Disabled" under the Plan.

46. Endres has exhausted all administrative remedies.

CAUSES OF ACTION

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

47. Endres realleges the preceding paragraphs as if fully set forth herein.

48. Endres is entitled to all unpaid and accrued LTD benefits, as Prudential;

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Endres's medical impairments and resulting limitations;

    c. Ignored evidence that Endres's conditions have not improved to the present; and

    d. Issued an unfavorable decision that was arbitrary and capricious.

49. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Endres is entitled to an award of actual damages for losses suffered.

50. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

51. Prudential has not satisfied its obligation to pay Endres's LTD benefits.

52. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Endres prays for judgment against Prudential for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

53. Endres realleges the preceding paragraphs as if fully set forth herein.

54. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

55. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary Prudential of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries;

and (ii) defraying reasonable expenses of administering the plan."

56. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Prudential is a fiduciary.

57. Endres participated in Prudential's LTD benefits plans as previously indicated.

58. As the payor of benefits and the entity responsible for benefits determinations, Prudential operates under an inherent structural conflict of interest.

59. A higher than marketplace quality Prudential, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Prudential's actions as a fiduciary.

60. Prudential breached its fiduciary duty in:

61. Referring Endres's claim for medical review to persons who were not able to exercise independent thought or judgment, or deviate from Prudential's previously expressed position;

    a. Referring Endres's claim for medical review to a person who was not qualified to render any medical judgments or opinions;

    b. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

62. Engaging in a direct structural conflict of interest by referring Endres claim to a person who is directly answerable to Prudential and whose employment and compensation is determined by Prudential; and

    a. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations.

63. Failing to provide all documents relevant to Prudential's unfavorable decision.

64. Prudential denied Endres's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

65. Prudential failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Endres and the Plan's participants and beneficiaries generally.

66. Prudential's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

67. Prudential's violations of regulations alone allow Endres the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

68. Prudential's violations of federal regulation also subject its decision to *de novo* review.

69. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Endres prays for an order that Prudential retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Prudential in its fiduciary capacity; for an equitable accounting of benefits that Prudential has withheld; for the disgorgement of profits enjoyed by Prudential in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793

Benjamin R. Narrell. #76715
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
bnarrell@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF